ATTORNEY FOR APPELLANT
Kathleen M. Sweeney
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Ann L. Goodwin
Deputy Attorney General
Indianapolis, Indiana

In the

Indiana Supreme Court

FILED

Apr 30 2008, 2:32 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 45S03-0804-CR-199

SERGIO CAMPOS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Lake County Superior Court, No. 45G01-0507-FA-0035
The Honorable Salvador Vasquez, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-0605-CR-211

**April 30, 2008**

**Boehm, Justice.**

This case involves a traffic stop resulting in a vehicle search that uncovered cocaine. We hold that there was no probable cause to conduct the search, so consent was required. Because the officer communicated to the occupants of the car that consent to search was "necessary," the ensuing purported consent was invalid. The search therefore violated both the Indiana and Federal Constitutions, and the seized cocaine may not be admitted in evidence.

A second issue arises because the two occupants of the car were seated in a police cruiser while the search proceeded, and they made incriminating statements which were recorded on the cruiser's video-tape of the stop. The recorded statements are admissible in evidence. Although the statements were an indirect product of an unlawful search, they were freely given and not the result of unlawful interrogation.

**Facts and Procedural History**

On the morning of July 28, 2005, driver Cesar Santiago-Armendariz and passenger Sergio Campos were traveling in a Chevy Malibu on Interstate 80/94 in Lake County, Indiana. Officer Alfred Villarreal of the Lake County Highway Interdiction Unit clocked the vehicle at sixty-nine miles per hour in a fifty-five mile per hour zone. Villarreal paced the Malibu for about half a mile before pulling it over, parking his patrol car behind it, and activating an in-car video camera that recorded the entire stop. Villarreal approached the driver's side window and asked Santiago for his license and registration. Villarreal noticed that Santiago's hand was "shaking" as Santiago produced his paperwork. Villarreal then asked Santiago to have a seat in the police car. Santiago complied, but Campos remained in the Malibu. At some point, Villarreal reviewed the car's registration and ran a check of the car's license plate.

As Villarreal filled out a warning for the speeding violation, he asked Santiago where he and Campos were coming from, and Santiago said that the two were returning from the airport. Villarreal asked who the passenger was, and Santiago responded that it was his friend, Sergio Campos. Villarreal then asked who owned the car, and Santiago said it belonged to Campos's brother, Daniel. Villarreal asked which airport the two had come from, and Santiago responded that it was "not the big one, but the little one" in Chicago. Santiago repeated that the car belonged to Campos's brother, this time replying affirmatively to Villarreal's question whether the brother's name was Jose Gonzalez, apparently the name obtained from the car's registration.

At this point, Villarreal left the patrol car to question Campos, who had remained in the Malibu's passenger seat. At Villarreal's request, Campos produced some identification. Villarreal asked Campos if the airport they were returning from was "O'Hare, the big one?" Campos replied, "Yeah." In response to questioning, Campos said he and Santiago were coming from the airport where they had just dropped off his mother, who was flying Mexicana Airlines. Villar-

2

real testified that he knew that Mexicana, as an international airline, used only O'Hare, Chicago's largest airport. Campos also said that the car was his brother's and he had permission to use it.

Villarreal then returned to the police car and resumed questioning Santiago. After Villarreal told Santiago that O'Hare was the big airport, Santiago repeated that he and Campos had just returned from the airport in Chicago, but "not the big one." Villarreal testified that he "made a mental note of [Santiago's] moving around in my chair" when asked about the purpose of his trip.

Villarreal ran warrant checks on both Santiago and Campos and determined that the car was not reported stolen. Villarreal then "had" Santiago exit the vehicle, returned Santiago's driver's license and the car registration with a copy of the warning, and told Santiago to "gain some speed" before pulling back out into traffic and to "drive safe." Santiago thanked Villarreal and shook his hand. Villarreal testified that at that point Campos and Santiago were free to go "[i]n their mind."

As soon as Santiago turned to walk back toward the Malibu, Villarreal said, "Excuse me, sir, do you all have anything illegal in the car?" When Santiago replied in the negative, Villarreal asked him for consent to search the car. Santiago asked, "Is it really necessary?" Villarreal responded, "Yes." Santiago then gave a response that is not audible on the video, but, according to Villarreal, was, "Okay."

It appears from the video that Campos could not have heard the exchange between Santiago and Villarreal, and no one claims he did. Villarreal told Santiago to have a seat in the police car and then returned to the Malibu to ask Campos for consent to search the car. Campos told Villarreal to ask Santiago, and Villarreal responded, "Well, he gave me consent." Campos's reply, like Santiago's response to the request for consent, is inaudible on the tape, but Villarreal testified that Campos then said, "Okay." Villarreal asked Campos to join Santiago in the police car. While Villarreal searched the car, Campos and Santiago held a conversation in the police cruiser that was recorded on the video, apparently without their knowledge. The conversation is audible, but is in a mixture of Spanish and English and no translation is in the record. Campos

3

stipulated that the tape contains "damaging admissions" and his brief describes the exchange as the two talking "freely in Spanish making admissions about the drugs."

Villarreal found a brick-shaped package of cocaine in the trunk of the Malibu. Campos was charged with Dealing in Cocaine, a Class A Felony. Campos moved to suppress the cocaine, contending that the search violated both the Fourth Amendment and article I, section 11 of the Indiana Constitution. He also moved to suppress the recording of his statements to Santiago in the patrol car, contending the recording violated both the Fifth Amendment and article I, section 14 of the Indiana Constitution. After a suppression hearing, the trial court denied Campos's motion to suppress the evidence obtained from the car, holding that Campos lacked standing to challenge the search, and, alternatively, that Campos had waived his claim to standing by leaving the decision to search to Santiago. The trial court also denied the motion to suppress Campos's statements recorded in the police cruiser on the ground that Campos did not have an expectation of privacy in the cruiser.

Campos was granted leave to file an interlocutory appeal. He argued that he had standing to contest the search of the vehicle, that he was illegally detained by Villarreal, and that Villarreal had violated the Indiana Constitution by failing to advise him of his right to counsel before seeking consent to the search. Campos also challenged the admission of his statements recorded in the police car before a <u>Miranda</u> warning was given. The State responded that Villarreal had reasonable suspicion to detain Campos after the traffic stop had ended; Campos had no standing to contest the vehicle search; Campos waived any claim to standing to contest the search; no <u>Pirtle</u> warning was required because Campos was not in custody when he gave consent; Campos was not subjected to interrogation so no <u>Miranda</u> warning was required; and Campos had no expectation of privacy in the police cruiser. The Court of Appeals affirmed, holding that Campos lacked standing to challenge the search, Villarreal had reasonable suspicion to continue the detention, and the statements made in the police car did not require <u>Miranda</u> warnings. <u>Campos v. State</u>, 867 N.E.2d 676, 681-83 (Ind. Ct. App. 2007). Judge May dissented, concluding that the search of the Malibu was unconstitutional both because Campos's delayed detainment constituted a second stop that was not supported by reasonable suspicion, and, although Campos was in custody after Villarreal told Santiago that a search of the car was "necessary," he was not ad-

4

vised of his right to an attorney.  Id. at 683-90.  We grant transfer by order concurrent with this opinion.

## Standard of Review

We review de novo a trial court's ruling on the constitutionality of a search or seizure. Myers v. State, 839 N.E.2d 1146, 1150 (Ind. 2005).  However, we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous.  Id. Thus, we do not reweigh the evidence, but consider conflicting evidence most favorably to the trial court's ruling.  State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006).

## I. The Search of the Malibu

Many search and seizure issues are resolved in the same manner under both the Indiana and Federal Constitutions.  The search of the Malibu presents some in that category.  These are addressed in Part I. A.  Part I. B deals with issues unique to Indiana law under article I, section 11.

A. *Issues Common to Both Indiana and Federal Search and Seizure Doctrines*

1. *Reasonable Suspicion to Detain*  A traffic stop is a "seizure" subject to the constraints imposed by both the Indiana and Federal Constitutions.  One exception to the warrant requirement for a seizure is an investigatory stop based on reasonable suspicion.  Baldwin v. Reagan, 715 N.E.2d 332, 337 (Ind. 1999); Terry v. Ohio, 392 U.S. 1, 30-31 (1968).  "Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur."  Baldwin, 715 N.E.2d at 337.  Campos concedes that Villarreal had reasonable suspicion to support the initial stop for speeding.  Campos argues that his and Santiago's detention based on the traffic violation concluded when the warning was given to Santiago and that Villarreal's subsequent interrogation constituted a second stop that was not based on reasonable suspicion and therefore violated both the Indiana and Federal Constitution.[1]

_____

[1] Campos and the State both state that this claim was not raised in the trial court.  However, we agree with the Court of Appeals that this issue was presented in "Defendant's Memorandum in Support of Motion to Suppress Evidence."

The State does not challenge Campos's assertion that Villarreal needed reasonable suspicion to detain Campos after the traffic violation portion had concluded. Instead, the State claims that Villarreal had reasonable suspicion to detain Campos, and the Court of Appeals agreed. Campos v. State, 867 N.E.2d 676, 682 (Ind. Ct. App. 2007). Reasonable suspicion, like probable cause, is a highly fact-sensitive inquiry.[2] Nervousness, demonstrated through shaking and fidgeting, in combination with the inconsistent stories regarding both the recent trip to the airport and the name of the car's owner, could support a finding that Villarreal had reasonable suspicion to detain Campos. But the trial court made no finding regarding reasonable suspicion.

We do not need to resolve the issue of reasonable suspicion. Assuming Villarreal had reasonable suspicion to continue detainment of Campos and Santiago, he still did not possess the higher degree of certainty required for probable cause to search the vehicle under the federal

---

Campos also argues that Villarreal had no right to ask Campos to produce identification. Because Campos was seized when Santiago was seized, it was not unreasonable for Villarreal to ask for identification. See Cade v. State, 872 N.E.2d 186, 188-89 (Ind. Ct. App. 2007); U.S. v. Ellis, 497 F.3d 606, 613-14 (6th Cir. 2007).

[2] Precedent gives some guidance on various factors that contribute to reasonable suspicion. For example, an inconsistent answer regarding present purpose or destination "casts suspicion and doubt on the nature and legitimacy of the activity being investigated." Quirk v. State, 842 N.E.2d 334, 342 (Ind. 2006) (quoting United States v. Jones, 269 F.3d 919, 928 (8th Cir. 2001)). And, while nervousness alone is not enough, nervousness can constitute reasonable suspicion when combined with other factors. Finger v. State, 799 N.E.2d 528, 534-35 (Ind. 2003). Thus, in Quirk this Court upheld the trial court's grant of defendant's motion to suppress, finding that Quirk's nervousness combined with a handwritten bill of lading, past use of aliases, criminal history of transporting controlled substances, lies about his criminal history, and driver's license from a state known for narcotics, did not constitute reasonable suspicion. 842 N.E.2d at 340-43. However, in Finger, this Court found reasonable suspicion when nervousness was combined with an anonymous tip that Finger's car was "suspicious," Finger claimed he was out of gas but his gauge was not on low, and the driver and passenger gave inconsistent stories about their presence. 799 N.E.2d at 534-35. In this case, Villarreal testified that

> Mr. Santiago conversed with me, and I made a mental note of his moving around in my chair as I asked him about questions about the purpose of his trip. And my clarifying questions confirmed to me that I had two different stories. It caused suspicion in my mind, everything from the beginning of the traffic stop when I approached him when he fumbled his paperwork, his shaking of the hand when he gave me the – all the information back to me, to the purpose of his trip. He didn't know who the vehicle belonged to. He said it belonged to the passenger's brother. Mr. Campos' brother. He told me his name was Daniel. I looked at the registration, I even ran the plates to make sure there was no – is there a Daniel here. The registration didn't match anything that the driver told me. Speaking to the passenger, Mr. Campos, he tells me a completely different story about O'Hare Airport. This was all – this all together gave me – I became very suspicious of what was going on here, if I had more than just a speeder on the interstate.

6

"automobile exception" to the warrant requirement. See Carroll v. United States, 267 U.S. 132 (1925). Nor did Villarreal have the evidence of a drug-sniffing dog or other confirmatory evidence sufficient for the Indiana totality of the circumstances test to search the car without a warrant. See Myers v. State, 839 N.E.2d 1146 (Ind. 2005). As a result, the search of the Malibu was lawful only if Villarreal obtained valid consent. We discuss consent in Part 3.

2. *Standing to Challenge the Search* Standing to challenge a search or seizure under article I, section 11 differs in some respects from standing to assert a Fourth Amendment claim. Specifically, the Indiana Constitution provides protection for claimed possessions irrespective of the defendant's interest in the place where the possession was found. Peterson v. State, 674 N.E.2d 528, 534 (Ind. 1996). This difference is not at issue here, and we believe federal precedent addressing standing of a passenger asserting an interest in a searched vehicle is equally applicable under the Indiana Constitution.

The State does not contest Campos's standing to challenge his detention after the traffic stop had concluded. Passengers are allowed to challenge any part of a vehicle stop under either the Indiana or Federal Constitutions because they are essentially seized when the driver is seized. Brendlin v. California, 127 S. Ct. 2400, 2403 (2007); see Osborne v. State, 805 N.E.2d 435, 439 (Ind. Ct. App. 2004). The State does, however, argue that Campos has no standing to challenge the search of the car. The Court of Appeals agreed that although Campos had standing to challenge the stop, he lacked standing to challenge the search of the Malibu. Campos, 867 N.E.2d at 680.

To challenge a search "a defendant must establish ownership, control, possession, or interest" in the premises searched. Peterson, 674 N.E.2d at 532-34. The defendant must show a subjective and objective expectation of privacy in the premises. Smith v. Maryland, 442 U.S. 735, 740 (1979). Passengers in a car driven by the owner do not have standing to challenge a search of the car. Pollard v. State, 270 Ind. 599, 604, 388 N.E.2d 496, 502 (1979) (quoting Rakas v. Illinois, 439 U.S. 128, 148-49 (1978)). Correspondingly, a driver who is not the owner has no standing if the owner is also in the car. See United States v. Jefferson, 925 F.2d 1242, 1249 (10th Cir. 1991); United States v. Lochan, 674 F.2d 960, 965 (1st Cir. 1982) (driver had no standing even though had been on a long trip and had the registration, because there was no luggage in the car, car had not been used on multiple trips, and owner was also in the car). If the

7

owner is absent, a driver with permission of the owner may have standing. See United States v. Rubio-Rivera, 917 F.2d 1271, 1275 (10th Cir. 1990) (petitioner had standing because owner had loaned him the car); see also United States v. Williams, 714 F.2d 777, 779 n.1 (8th Cir. 1983) (petitioner had standing because of permission on that day and on previous occasions to drive uncle's girlfriend's car); United States v. Portillo, 633 F.2d 1313, 1317 (9th Cir. 1980), cert. denied, 450 U.S. 1043 (1981) (petitioner who had borrowed car from friend had standing). In sum, we agree that "[w]here the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle." Rubio-Rivera, 917 F.2d at 1275.

In Hester v. State, the Court of Appeals relied on a presumption that a driver has standing unless there is evidence to the contrary. 551 N.E.2d 1187, 1189 (Ind. Ct. App. 1990). The court found standing established based on a lack of evidence that the driver did not have the owner's permission. Id. Most courts, however, require some evidence of permission to possess the vehicle in order to establish standing. Compare United States v. Martinez, 808 F.2d 1050, 1056 (5th Cir. 1987) (standing found when owner-boyfriend testified that defendant had permission to use the car), and United States v. Griffin, 729 F.2d 475, 483 n.11 (7th Cir. 1984), cert. denied, 469 U.S. 830 (1984) (non-owners had standing where petitioners had permission to drive and exclusive control over the vehicle that day), with United States v. Figueroa-Espana, 511 F.3d 696, 704 (7th Cir. 2007) (no standing where defendant could not identify the owner of the vehicle and produced no evidence of permission to use the vehicle or a valid driver's license), and United States v. Valdez Hocker, 333 F.3d 1206, 1209 (10th Cir. 1987) (no standing because non-owner did not establish "that he gained possession from the owner or someone with authority to grant possession"). In United States v. Miller, 821 F.2d 546, 548 (11th Cir. 1987), the court found the driver of a borrowed car had standing because the driver had testified that he had consent to drive the car and the government had introduced no evidence to the contrary. In response to the state's contention that the driver's assertions were insufficient to establish standing, the court noted

> The holding that the government advocates would mean that a perfectly innocent citizen who, say, borrowed a neighbor's car with permission, would not have standing to challenge a search of that car. We are not willing to require such a citizen to forego his or her Fourth Amendment rights or obtain some form of

8

signed affidavit that could be presented to a law enforcement officer to establish legitimate possession of the car.

Id. at n.2.

We agree with the reasoning of the court in United States v. Miller. The only evidence in the record regarding the ownership of the car comes from Campos and Santiago. Specifically, both Campos and Santiago told Villarreal that the car was Campos's brother's and Campos said he had permission to use it. The State has produced no evidence that the car is not Campos's brother's or that Campos did not have permission to use it. Accordingly, Campos has standing to challenge the search of the car.

3. *Consent*  A warrantless search based on lawful consent is consistent with both the Indiana and Federal Constitutions. Perry v. State, 849 N.E.2d 1236, 1240 (Ind. 1994); Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The state has the burden of proving "that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." Schneckloth, 412 U.S. at 248; accord Kubsch v. State, 784 N.E.2d 905, 917-18 (Ind. 2003). "Voluntariness is a question of fact to be determined from all the circumstances." Schneckloth, 412 U.S. at 248-49; accord Callahan v. State, 719 N.E.2d 430, 435 (Ind. Ct. App. 1999).

This somewhat elusive standard can present difficult issues. See generally 4 Wayne R. LaFave, Search & Seizure § 8.2 (4th ed. 2004) (collecting cases). However, this is not a close case. In Bumper v. North Carolina, the United States Supreme Court held that consent was invalid where it was given after a police officer said he possessed a warrant, but no warrant was ever produced. 391 U.S. 543 (1968). The Court held that "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. . . . Where there is coercion there cannot be consent." Id. at 550. By telling Santiago that a search of the car was "necessary," Villarreal announced, in effect, that Santiago had "no right to resist the search." Santiago's consent, therefore, was invalid.

Campos was the person authorized by its owner to control the use of the car. Villarreal therefore needed valid consent from Campos in order to search the car, and apparently recognized that need. When asked for consent to search the vehicle, Campos told Villarreal to ask Santiago. It was only after Villarreal told Campos that Santiago had consented that Campos said

9

"Okay." Campos was not told that it was "necessary" to search, but that fact did not render Campos's consent valid. In Conner v. State, consent was given only after an invalid search warrant was presented. 201 Ind. 256, 257-59, 167 N.E. 545, 545 (1929). As in Bumper, consent based on a misrepresentation of authority was deemed invalid. Id. at 258-59, 167 N.E at 545-49. Campos's consent was based on Villarreal's representation that Santiago had given consent. Because Santiago's consent was defective, so also was Campos's.

4. *Waiver* The trial court held that even if Campos had standing to object to the search, he waived it by making his answer dependent on Santiago's. Standing is a personal right, and as such, can be waived or abandoned. Moran v. State, 644 N.E.2d 536, 540 (Ind. 1994), abrogated on other grounds by Litchfield v. State, 824 N.E.2d 356 (Ind. 2005). We do not agree that standing was waived in this case. The officer asked Campos for consent to search the vehicle, and Campos said to ask Santiago. It was only after Villarreal told Campos that Santiago had consented that Campos himself consented. We agree with Campos that "[t]his exchange proves Campos's agreement with Santiago's decision, not forfeiture." Otherwise stated, Campos's response indicated willingness to accept Santiago's decision as to consent. Campos's consent was valid only to the extent that Santiago's was and as explained in Part 3, Santiago's purported consent was not.

We therefore find the search to violate both article I, section 11 of the Indiana Constitution and the Fourth Amendment, and all evidence seized from it must be suppressed. See Quirk v. State, 842 N.E.2d 334, 343 (Ind. 2006); Weeks v. United States, 232 U.S. 383 (1914).

B. *Indiana's Pirtle Warning*

Article I, section 11 of the Indiana Constitution "requires that a person in custody explicitly waive the right to counsel before giving a valid consent to a search." Clarke v. State, 868 N.E.2d 1114, 1119 (Ind. 2007) (citing Pirtle v. State, 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975)). Campos argues that his consent to search the Malibu was invalid because he did not receive a "Pirtle warning," and did not waive the right to counsel before consenting to the search. As is often the case, the issue here is whether the defendant is in custody, which requires a Pirtle warning, or is merely the subject of an investigative stop, which requires no warning.

10

There is no bright line test "for determining when an investigatory detention moves beyond merely a Terry stop and becomes an arrest or custodial interrogation." Jones v. State, 655 N.E.2d 49, 55 (Ind. 1995). Custody is determined by an objective test: whether reasonable persons under the same circumstances would believe they were in custody or free to leave. Id. In Jones, police cars stopped in front of Jones's car. Id. at 52. The police took Jones's license and asked him to step out of the car. Id. Even though no Pirtle warning was given, we held that there was no Pirtle violation because, although Jones had been seized, he was not in custody, and the police informed Jones of his right to refuse to consent. Id. at 56. In Clarke, we also upheld consent given without a Pirtle warning. 868 N.E.2d at 1121. In that case, the police responded to an anonymous tip about a parked black car. Id. at 1116. The police officer activated her flashers and walked over to the car, where Clarke gave her his driver's license and registration. Id. After the officer ran Clarke's identification through the system, she questioned him about what he was doing there and whether there was anything illegal in the car. Id. at 1116-17. When Clarke said there was nothing illegal in the car, the officer asked for consent to search, and Clarke consented. Id. at 1117. We held that Clarke's consent was valid because "a police officer who neither explicitly nor implicitly communicates that a person is not free to go about his or her business may ask questions of the person to investigate allegations of criminal activity without implicating the Fourth Amendment or requiring the advisement of rights under the Indiana Constitution." Id. at 1116. However, in Sellmer v. State, consent was held invalid because no Pirtle warning was given. 842 N.E.2d 358, 365 (Ind. 2006). In that case, the police never answered Sellmer's questions about her right to refuse consent, told Sellmer that it was in her "best interest to cooperate" with them, and that they would "allow" her to go on her way if they did not find anything. Id. at 364-65. We found that Sellmer was in custody because a person in Sellmer's position would not believe that she was free to disregard the police request. Id.

When Villarreal told Santiago that it was "necessary" to search his car, no reasonable person would think that he had the right to leave or to decline Villarreal's request. Therefore, Santiago was in custody. It is conceded that Santiago did not receive a Pirtle warning. Thus, there was a Pirtle violation with regard to Santiago. Although Santiago was effectively in custody after Villarreal said the search was "necessary," Campos had remained in the Malibu and was merely being detained under an investigatory stop. He was not told that his compliance was necessary, so he was not in custody. Accordingly, there was no Pirtle violation at the time that

11

Campos was asked to consent to the search. The consent was, however, invalid for the reasons given in Part A. 3.

## II. Statements Recorded While in the Police Car

Campos argues that his statements recorded while in the police cruiser should be suppressed as a violation of his Fifth Amendment right to silence.[3] Statements are protected under both the Fourth and Fifth Amendments and may be inadmissible as self-incrimination under Miranda or as the product of duress, coercion, or an unconstitutional search. Brown v. Illinois, 422 U.S. 590, 600-02 (1975). Incriminating statements made pursuant to an illegal search can be admissible, however, if the statements are voluntary under the Fifth Amendment and "sufficiently an act of free will to purge the primary taint of the unlawful invasion" under the Fourth Amendment. Id. at 599 (quoting Wong Sun v. United States, 371 U.S. 471, 486 (1963)).

Although Campos's statements were made after an unlawful search and accompanying seizure, they were voluntary and freely given without duress or coercion. They therefore were not "tainted" by the unlawful search and detention. Campos argues that the admission of his statements nevertheless violated the Fifth Amendment because he did not receive a Miranda warning of his right to remain silent. Miranda warnings must be given to people in police custody before interrogation. However, "[p]olice officers are not required to give Miranda warnings unless the defendant is both in custody and subject to interrogation." Ritchie v. State, 875 N.E.2d 706, 716 (Ind. 2007). Villarreal posed no questions to Campos or Santiago while the two were in the car and Villarreal was searching the Malibu. Because Campos was not under interrogation, there was no Miranda violation.

The recording is also challenged as an unlawful search. To challenge the admission of the statements under the Fourth Amendment as an illegal search, Campos must establish both a subjective and objective expectation of privacy in the place "searched," i.e., the police cruiser. In United States v. McKinnon, 985 F.2d 525, 526 (11th Cir. 1993), cert. denied, 510 U.S. 843

---

[3] Campos argues that the recording of his statements also violated article I, section 14 of the Indiana Constitution but provides no cases or analysis addressing this provision, so we decline to address it. The only Indiana case cited, Packer v. State, 800 N.E.2d 574 (Ind. Ct. App. 2003), deals with federal and Indiana wiretapping statutes. Campos failed to raise any argument based on these statutes in the trial court. As a result, these contentions are not available on appeal.

(1993), McKinnon was a passenger in a vehicle stopped for a traffic violation. McKinnon was "invited" by the police to sit in their police cruiser after the driver consented to a search. Id. Unbeknownst to McKinnon and the driver, the police activated a tape recorder inside the police cruiser. Id. While the police were searching the vehicle, McKinnon and the driver engaged in an incriminating conversation. Id. The police found cocaine in the vehicle, and arrested both McKinnon and the driver. Id. After the arrest, McKinnon and the driver, still in the police cruiser, engaged in a second incriminating conversation. Id. The court held that both groups of statements were admissible because McKinnon had no reasonable or justifiable expectation of privacy in the police cruiser. Id. at 527-28; see also State v. Smith, 641 So.2d 849, 852 (Fla. 1994); State v. Wischnofske, 878 P.2d 1130, 1133-34 (Or. Ct. App. 1994); State v. Turner, 641 S.E.2d 436, 437 (S.C. 2007); State v. Morgan, 929 S.W.2d 380, 384 (Tenn. Crim. App. 1996). In United States v. Clark, the Eighth Circuit agreed with McKinnon, explaining, "A police car is not the kind of public place, like a phone booth, where a person should be able to reasonably expect that his conversation will not be monitored." 22 F.3d 799, 802 (8th Cir. 1994) (internal citations omitted). Campos seeks to distinguish McKinnon on the ground that Campos was in custody at the time of the statements. McKinnon made statements both before and after his arrest. McKinnon, 985 F.2d at 526. The court held that there was no difference between the two for this purpose. Id. at 528. We agree. In sum, Campos's statements were voluntary under the Fifth Amendment and he had no expectation of privacy in the police cruiser under the Fourth Amendment. Accordingly, Campos's statements are admissible.

## Conclusion

The trial court's denial of Campos's motion to suppress the evidence gathered during the automobile search is reversed. The trial court's denial of Campos's motion to suppress the statements made in the police cruiser is affirmed. This case is remanded to the trial court for further proceedings consistent with this opinion.

Shepard, C.J., and Dickson and Sullivan, JJ., concur.

Rucker, J., concurs except as to Part I. B, in which he concurs in result.

13