STATE of Indiana, Appellant–Plaintiff,

v.

Greg PETERS and Tricia Peters,
Appellees–Defendants.

No. 05A02–0908–CR–735.

Court of Appeals of Indiana.

Feb. 23, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Chris M. Teagle, Muncie, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The State appeals the trial court's grant of Greg Peters' and Tricia Peters' motions to suppress evidence. The State presents a single issue for our review, namely, whether the trial court erred when it granted the motion to suppress.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On December 26, 2008, members of the Hartford City Fire Department responded to a house fire at 419 East Chestnut Street in Hartford City. Once the firefighters extinguished the flames, they conducted a secondary search of the entire house, including inside cabinets, closets, and large appliances, to look for areas where fire could be smoldering. In the course of the initial and secondary searches, the firefighters removed flammable items from the house and threw them onto a debris pile outside the house. In addition, the firefighters searched the house for clues regarding the cause of the fire.

Ron Kreischer, the fire investigator for the Hartford City Fire Department, has undergone training with the Indiana State Police in the detection of methamphetamine laboratories. In the course of the secondary search of the house, Kreischer observed several items commonly used in the manufacture of methamphetamine, including: two boxes of matches, hot burners, kerosene heaters, several flammable liquid canisters, and a Coleman fuel tank. Accordingly, Fire Chief Brett Murray contacted the police. Three police officers arrived at the scene, and firefighters took the officers inside the house and showed them the suspected methamphetamine precursors they had already found. While inside the house, the firefighters showed the police officers a crock pot they found inside the refrigerator. The crock pot had a dried white substance on it. The officers also saw the flammable items that firefighters had discarded in the debris pile outside the house.

After touring the house with firefighters for approximately ten or twenty minutes, Officer Sam Tarlton approached Greg Peters, who was standing in the driveway of the commercial garage located immediately adjacent to the 419 East Chestnut house at the time officers arrived. Mr. Peters told Officer Bonewit that he owned the house where the fire had occurred. But Mr. Peters was living in a house located at 405 East Chestnut, which is on the other side of the commercial garage abutting the 419 house. Mr. Peters explained that he was remodeling the 419 East Chestnut house and that he occasionally ate and slept in that house.

Officer Greg Bonewit contacted the local prosecutor, who initiated a telephonic probable cause hearing with Judge Dean Young in an effort to obtain a search warrant for the house. During the hearing, Officer Bonewit testified to the items firefighter James Teer had told him Teer had found inside the house: cans of acetone, three cans of Coleman fuel, numerous plastic containers and bottles, several electric burners, several aerosol cans, and a jug of kerosene. In addition, the firefighters had shown him the crock pot, with a dried

white material on it, inside the refrigerator. Officer Bonewit testified that the items were consistent with things used in the manufacture of methamphetamine. Officer Jeff Sones testified that during a previous investigation of Greg Peters' house at 405 East Chestnut officers had found methamphetamine precursors and methamphetamine inside the residence. And Officer Sones confirmed Officer Bonewit's conclusion that the items firefighters found in the house at 419 East Chestnut were consistent with the manufacture of methamphetamine. Finally, Officer Tarlton testified that he was at 419 East Chestnut to assist the firefighters in their duties. He observed an electrical cord hooked up between the houses at 405 and 419 East Chestnut, and Mr. Peters acknowledged that the cord was the sole source of electricity for the 419 house.

Judge Young granted the search warrant, which permitted officers to search both the 405 and 419 East Chestnut houses for precursors used in the manufacture of methamphetamine and methamphetamine found at either house. Officers executed the warrant and seized several items typically used in the manufacture of methamphetamine and methamphetamine. The State charged Greg and Tricia each with dealing in methamphetamine, as Class B felonies. The Peterses then each filed motions to suppress the evidence police seized during the search under the warrant. The Peterses maintained that the officers' initial, warrantless search of the house was unconstitutional and impermissibly tainted the evidence they seized pursuant to the search warrant. Following a hearing, the trial court granted the motions to suppress. In particular, the trial court found and concluded in relevant part as follows:

The blaze [at the Peterses' house] was extinguished within minutes of the firefighters' arrival on the scene. After extinguishing the blaze, the firefighters conducted a "secondary search" of the premises in order to make absolutely sure that the fire did not re-ignite, and that all inflammatory materials were removed from the residence. . . .

Firefighter Kreischer . . . was trained in the detection and recognition of "meth labs" which consisted of the use of precursors and equipment necessary for the manufacture, possession, sale or use of methamphetamine, a controlled substance. During the secondary search, Officer Kreischer entered the residence in performance of his tasks as a fire investigator. Therein he discovered a large supply of matches, kerosene, Coleman lighter fluid, burners, and more, which led him to believe that the residence may have been used as a meth lab for the illegal manufacture of methamphetamine. He shared his concerns with Fire Chief Bret Murray. Chief Murray contacted the Hartford City Police Department and requested that officers be dispatched to the scene. The officers arrived approximately 45 minutes after the arrival of the Fire Department. Upon their arrival, Fire Chief Murray shared the information communicated to him by Investigator Kreischer with Police Investigator, Greg Bonewit. Chief Murray also pointed out to Officer Bonewit several items constituting the precursors and equipment that Officer Kreischer identified as consistent with the items found in a meth lab. Those items had been removed from the home and placed in a debris field that was created on the west side of the residence by the firefighters.

Thereafter, Officer Bonewit, and other members of the Police Department, entered the residence. Chief Murray and Investigator Kreischer conducted a tour of the inside of the structure; pointing out the precursors and equipment that

they considered consistent with the operation of a meth lab. Cabinet doors were opened by the firefighters so that the police officers could observe particular evidence, and at one point, the refrigerator door was opened so that the officers could witness a crock pot containing a liquid substance. It is clear from the testimony that the Police Department was summoned to the scene as a result of observations made by firefighters of possible criminal activity, and that the entry of all public safety personnel into the residence thereafter was for the purpose of conducting a criminal investigation.

\* \* \*

Greg and Tricia Peters challenge the propriety of the State's initial search of the residence at 419 E. Chestnut Street before obtaining a warrant. *Both Peters[es] claim that the search conducted by law enforcement prior to the issuance of the warrant violated the 4th Amendment to the United States Constitution as well as Article I, Section 11 of the Indiana Constitution.* Therefore, they claim that all items seized following the illegal search, including those seized following the issuance of the warrant, must be suppressed as evidence.

\* \* \*

The State offers *Sloane v. State,* 686 N.E.2d 1287 (Ind.Ct.App.1997), as controlling, and in support of the State's warrantless search of the premises prior to the issuance of the warrant. In *Sloane,* firefighters and police officers were simultaneously dispatched to a residential fire. Officer Blocher, of the Wabash Police Department, was the first to arrive at the scene. While combating the blaze, and during the subsequent walkthrough, law enforcement and fire-fighters discovered substantial evidence of arson. The defendant was subsequently convicted of Attempted Arson, a Class B felony, and sentenced to the Department of Correction for 10 years. He filed a direct appeal challenging the warrantless search of his premises by law enforcement and requested that all evidence of the arson be suppressed. The Court of Appeals affirmed Sloane's conviction, holding that the presence of a fire is an emergency which excuses the intrusion into otherwise private areas for purposes of combating the blaze. *Sloane* [686 N.E.2d at 1293]. Further, the Court held that finding the cause and the origin of a blaze is a firefighter's responsibility, and if the entry into the residence for that purpose is constitutional, then the seizure of the instrumentality of a crime in plain view is also constitutional. *Sloane* [686 N.E.2d at 1291].

\* \* \*

In deciding this case in favor of the defendant's Motion to Suppress, the Court notes that there were no exigent circumstances upon which the entry by law enforcement was based.... At the threshold, the Court begins with the presumption that all warrantless searches are per se unreasonable. *Clark v. State,* 562 N.E.2d 11 (Ind.1990). Absent consent or exigent circumstances law enforcement may not search a person's property, house or effects, whether the inquiry is pursuant to the 4th Amendment to the United States Constitution, or Article I, Section 11 of the Indiana Constitution. *Michigan v. Clifford,* 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984). In this case, clearly no consent to search either the 419 E. Chestnut or the 405 E. Chestnut location was given by the owner. The testimony is clear that the owner, Greg

Peters, was present at the scene, and was not asked, nor did he volunteer, his consent to search either location. Additionally, by the time law enforcement arrived on the scene there was no emergency. The scene had been secured, all combustible materials had been removed, there were no injured persons to be rescued, and no unauthorized persons were attempting to gain access thereto. Additionally, the area had been cordoned off by police crime tape, put in position by the firefighters.

Once law enforcement arrived, they were immediately advised by Chief Murray that a meth lab was suspected, and the type of precursors and equipment that were found inside the 419 E. Chestnut residence. Such observations made by the firefighters were confirmed by the officers' own inspection of the debris field prior to the entry into either residence. In short, there was no exigent circumstance upon which a warrantless search could be based. In fact, if the constitutional right to privacy is ever to survive a residential fire, it must survive the facts of this case. The officers had time for reflective thought, to secure a warrant based upon credible hearsay of the firefighters, and their own observations in the debris field. Whether the oral probable cause for a search warrant was conducted at 3:40 p.m. or at 5:02 p.m. on the afternoon of the fire, one thing is certain—it was merely a phone call away. *Their failure to make the call was unreasonable under Article I, Section 11 of the Indiana Constitution.* The Court also believes that the Court of Appeals in *Sloane* would have found the warrantless search in this case unconstitutional pursuant to the 4th Amendment of the United States Constitution; if the facts in *Sloane* involved, as

here, a separate dispatch of police investigators more than 45 minutes after firefighters to the scene of the fire [sic]. In *Sloane* there was the present emergency of a house on fire. The emergency was being addressed by police and firefighters, in an effort to secure property and also to protect life and limb....

* * *

The State is, in effect, asking this Court to adopt a bright line rule that all residential fires support a warrantless entry by law enforcement officials, regardless of their motives. The State urges the Court to consider *Sloane* in support of that proposition. *This Court concludes that the State has misapplied the facts of Sloane to the facts of this case, and that the State's reliance on Sloane to determine the issues before this Court are misplaced.*

Accordingly, the Court finds that all evidence obtained from 419 E. Chestnut Street and 405 E. Chestnut Street, in Hartford City, Indiana, shall be suppressed commencing from the point the officers initially entered the home for purposes of conducting a search with the assistance of the firefighters on the scene. Evidence removed from the home by firefighting personnel during their original and secondary search of the residence, prior to the arrival of law enforcement, along with the original observations made by firefighters relating to those specific items of property, are not contemplated by the Court to be a part of this order. Nor are the items in plain view in the debris field and which may have been observed and seized by law enforcement officers.

Appellant's App. at 20–29 (emphases added).[1] This appeal ensued.

1. The State subsequently moved to dismiss the charges against the Peterses without prej-

## DISCUSSION AND DECISION

■■■ A reviewing court reviews a trial court's ruling on the constitutionality of a search or seizure de novo. *Campos v. State*, 885 N.E.2d 590, 596 (Ind.2008). However, deference is given to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Id.* A reviewing court looks to the totality of the circumstances and considers all uncontroverted evidence together with conflicting evidence that supports the trial court's decision. *Id.*

On appeal, the State maintains that the police officers' initial, warrantless search satisfied the Fourth Amendment to the United States Constitution under the holding in *Sloane v. State*, 686 N.E.2d 1287 (Ind.Ct.App.1997), *trans. denied.* In the alternative, the State asserts that even if the initial search was unconstitutional, the subsequent search pursuant to the warrant was valid. In particular, the State maintains that even without the evidence obtained by the police officers, when "only the information from firefighters is considered, the warrant is still supported by probable cause." Brief of Appellant at 7. We address each issue in turn.

■■■ First, the State has waived the issue of whether the officers' initial, warrantless search was constitutional because the State has failed to make any argument on the issue of the reasonableness of that search under Article I, Section 11 of the Indiana Constitution. The trial court unambiguously rested its holding on Article I, Section 11, and it is well settled that Indiana courts "interpret and apply Article I, Section 11 of the Indiana Constitution independently from federal Fourth Amendment jurisprudence." *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind.2001). Our investigation under Section 11 places the burden on the State to demonstrate that each relevant intrusion was reasonable in light of the totality of the circumstances. *Holder v. State*, 847 N.E.2d 930, 940 (Ind. 2006).

Here, the State's sole contention on appeal is that this court's opinion in *Sloane* is controlling. But the defendant in *Sloane* did not raise a challenge under the Indiana Constitution. *See* 686 N.E.2d at 1292 n. 4 ("The Appellant, having never raised the issue under Article I, Section 11 of the Indiana Constitution, we are concerned here only with issues of federal constitutional law.") Thus, our opinion in that case is limited to an analysis under the Fourth Amendment. Here, even assuming *Sloane* controls with respect to the Peterses' Fourth Amendment challenge to the search of their house,[2] the State has not made any argument that the trial court erred when it found the initial search unconstitutional under the Indiana Constitution. The issue is waived. Ind. Appellate Rule 46(A)(8)(a).

■■■ Second, we do not address the State's alternative argument that the evidence obtained pursuant to the search warrant is admissible because the probable cause affidavit was sufficiently supported by the evidence the firefighters found in the course of their searches. The State raises that issue for the first time on ap-

udice, and the trial court granted those motions.

2. Because the State has waived this issue for review, we need not determine whether *Sloane* is dispositive of the Peterses' Fourth Amendment challenge to the officers' initial warrantless search. Waiver notwithstanding,

we agree with the trial court that "the State has misapplied the facts of *Sloane* to the facts of this case, and that the State's reliance on *Sloane* [, where there were exigent circumstances,] to determine the issues before this Court are misplaced." Appellant's App. at 28.

peal. Indeed, during the suppression hearing, the State told the trial court that its "whole position ... is [that] the warrant wasn't needed in the first place." Appellees' App. at 79. At no time during the suppression hearing did the State even suggest that the search warrant was valid despite the initial, warrantless search. It is well settled that Indiana's appellate courts look with disfavor upon issues that are raised by a party for the first time on appeal or in original actions without first raising the issue in the trial court. *Byrd v. State,* 592 N.E.2d 690, 691 (Ind.1992). When the State is a party to a state court proceeding, it, like all parties, must comply with the rules then governing, and its actions, like those of all parties, are subject to scrutiny under principles of waiver and estoppel. *Id.* at 692. The issue is waived.

The State did not carry its burden with respect to either of the two issues it attempts to raise on appeal. This court is a neutral arbiter of disputes and not an advocate for either party. Because the State has waived the issues on appeal, we need not address the merits of the trial court's ruling on the Peterses' motions to suppress.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.