**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK K. PHILLIPS**
Boonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TONY MONKS, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )  No.  87A01-1209-CR-405 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE WARRICK CIRCUIT COURT
The Honorable David O. Kelley, Judge
Cause No. 87C01-1104-FB-1067

**May 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Tony Monks ("Monks") presents this discretionary interlocutory appeal from the trial court's denial of his motion to suppress evidence obtained when law enforcement officers entered his apartment to serve a warrant and discovered methamphetamine precursors. We affirm.

**Issue**

Monks presents one issue for our review, which we restate as whether the trial court's denial of his motion to suppress evidence was improper because officers:

(a)     violated his rights under the Fourth Amendment to the United States Constitution by entering the apartment; or

(b)     violated his rights under the Fifth Amendment to the United States Constitution by eliciting incriminating statements before providing Miranda warnings.[1]

**Facts and Procedural History**

On April 1, 2010, Sergeant Aaron Bennett of the Warrick County Sheriff's Department ("Sergeant Bennett") went to a residence on Fourth Street in Newburgh, Indiana to serve an arrest warrant on Emily Duke ("Duke"). He was accompanied by three Newburgh Police Department officers, Chief of Police Brett Sprinkle, Assistant Chief of Police Tiger Williams, and canine officer Chad Bailey.

The officers went to the door of the apartment listed on the warrant as Duke's

---

[1] See Miranda v. Arizona, 384 U.S. 436 (1966). Miranda established that a suspect subject to custodial interrogation has the right to consult with an attorney, a "procedural safeguard" not itself protected by the Constitution but a "measure to insure that the right against compulsory self-incrimination was protected." Davis v. United States, 512 U.S. 452, 456 (1994).

residence and knocked several times. They could hear floorboards creaking as they continued to knock. After some time, the officers went downstairs and contacted the building maintenance manager. He was located in the apartment directly below Duke's apartment. He confirmed that Duke lived upstairs and stated that, while he had last seen Duke two days earlier, he had heard someone walking around upstairs while the officers were knocking.

Sergeant Bennett went back upstairs and knocked again. He announced the officers' presence and warned that if the door was not opened it would be forced open. Receiving no response, Sergeant Bennett went downstairs and obtained the apartment key from the maintenance manager. Sergeant Bennett unlocked the door to Duke's apartment but discovered that the door had been dead bolted. The officers kicked in the door.

The officers then encountered a woman in the doorway, later identified as Joyce Mathis ("Mathis"), who is Monks's mother. The smell of ether was immediately detectable. On a bar separating the living room and kitchen, there was a clear liquid in a Mason jar, aluminum foil, salt, gloves, baggies, and a two-liter bottle containing white residue. Monks, who had been in the shower, was allowed to dress and sit beside Mathis on the sofa. Sergeant Bennett retrieved consent to search forms, which he read aloud to Mathis and Monks. They each signed the consent to search form.

During the ensuing search, the officers found items including rubber tubing, pseudoephedrine, lithium batteries, methamphetamine, a coffee grinder, Liquid Fire, denatured alcohol, and glass jars. Monks volunteered that the items being recovered

3

belonged to him and not to his mother. Monks additionally volunteered the information that he was not manufacturing methamphetamine but would clean filters and baggies to extract and concentrate methamphetamine residue for his personal use.[2] At one point, Sergeant Bennett "may have" asked Monks to identify an item. (Tr. 22.) Monks was taken to a police vehicle for transport to jail. It was at that time that he was first read his Miranda rights. After the warning, Monks "repeat[ed] the things that he'd been saying earlier on." (Tr. 64.)

The State charged Monks with Possession of Methamphetamine with the Intent to Manufacture or Deliver,[3] Possession of Precursors,[4] and Manufacture of or Dealing in Methamphetamine.[5] The State also alleged him to be a habitual substance offender.[6]

On March 16, 2012, Monks filed a motion to suppress evidence, arguing that the apartment entry was illegal, and that all the evidence obtained from the entry, including any testimony of his incriminating statements to officers, should be suppressed. On July 2, 2012, a hearing was conducted. On July 12, 2012, the trial court entered an order denying the motion to suppress evidence.

On August 8, 2012, Monks moved the trial court to certify its order for interlocutory appeal, and the trial court granted the motion on August 23, 2012. We accepted jurisdiction,

---

[2] Chief Sprinkle explained that a person can extract residual methamphetamine from a coffee filter by soaking it in denatured alcohol or ether and then using salt and Liquid Fire to create hydrochloride gas. A tube is inserted into a plastic soda bottle and hydrochloride gas forms. As the gas bubbles, the solid particles fall to the bottom. The process results in a "smoke off bottle." (Tr. 65.)

[3] Ind. Code § 35-48-4-1.1(a)(2).

[4] Ind. Code § 35-48-4-14.5(e).

[5] Ind. Code § 35-48-4-1.1(a)(1).

[6] Ind. Code § 35-50-2-10.

and this appeal ensued.

## Discussion and Decision

Monks brings this interlocutory appeal from the denial of a motion to suppress evidence, contending that the entry into his apartment violated the Fourth Amendment to the United States Constitution.[7] In particular, he claims that the officers lacked a reasonable belief that the subject of the warrant was present and no exigent circumstances existed to support a warrantless entry.[8] He also claims that, once they were inside, officers elicited incriminating statements without first providing a <u>Miranda</u> warning.

<u>Entry into Apartment</u>

We review a trial court's denial of a motion to suppress similarly to other sufficiency issues. <u>Litchfield v. State</u>, 824 N.E.2d 356, 358 (Ind. 2005). We determine whether substantial evidence of probative value exists to support the trial court's ruling. <u>Id.</u> We review <u>de novo</u> a trial court's ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. <u>Campos v. State</u>, 885 N.E.2d 590, 596 (Ind. 2008). Thus, we do not reweigh the evidence, but consider conflicting evidence most favorably to the trial court's ruling. <u>Id.</u> However, in reviewing a denial of a motion to suppress, we must also consider uncontested evidence that is favorable to the defendant. <u>Jackson v. State</u>, 785 N.E.2d 615,

---

[7] He does not develop a separate argument under Article 1, Section 11 of the Indiana Constitution.

[8] The existence of exigent circumstances is among the exceptions to the warrant requirement. <u>Holder v. State</u>, 847 N.E.2d 930, 936 (Ind. 2006). A warrant is unnecessary when the "'exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" <u>Id.</u> at 936–37 (quoting <u>Mincey v. Arizona</u>, 437 U.S. 385, 393–94 (1978)) (internal quotation marks omitted).

5

618 (Ind. Ct. App. 2003), <u>trans. denied</u>. We will affirm the trial court's ruling if it is sustainable on any legal grounds that are apparent in the record. <u>Richardson v. State</u>, 848 N.E.2d 1097, 1101 (Ind. Ct. App. 2006), <u>trans. denied</u>.

The Fourth Amendment to the United States Constitution states, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. This federal right to be free of unreasonable searches and seizures applies to the states through the Fourteenth Amendment. <u>Mapp v. Ohio</u>, 367 U.S. 643, 650 (1961). The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings. <u>Taylor v. State</u>, 842 N.E.2d 327, 330 (Ind. 2006) (citing <u>Ybarra v. Illinois</u>, 444 U.S. 85, 91 (1979)). The principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment. <u>Alspach v. State</u>, 755 N.E.2d 209, 212 (Ind. Ct. App. 2001), <u>trans. denied</u>.

Here, the officers were armed with a warrant for the arrest of Duke. "An arrest warrant founded on probable cause gives the police 'limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" <u>Duran v. State</u>, 930 N.E.2d 10, 15 (Ind. 2010) (quoting <u>Payton v. New York</u>, 445 U.S. 573, 603 (1980)). The belief is judged on the information available to the officers at the time of their entry and need not be proven correct in hindsight. <u>Id.</u> As a general proposition, "reason to believe" involves something less than probable cause. <u>Id.</u> However, entry into a home to

6

execute an arrest warrant, in the absence of exigent circumstances, and based on "reasonable belief" may require more than the "reasonable suspicion" of an investigative stop. Id. at 16.

Given the circumstances presented in Duran, the Court declined to "further explore the potential differences in the quality of information available required to meet probable cause, reasonable belief, and reasonable suspicion" but, for purposes of the opinion, adopted the terminology of the majority of courts and used "reasonable belief" to refer to the quality of information required to enter a home to execute an arrest warrant. Id. As for the substance of what is to be reasonably believed, the Court noted that most jurisdictions require that the police (1) have a reasonable belief that the dwelling is the residence of the subject of the warrant, and (2) that the subject is present at the time the officers attempt to enter on authority of the warrant. Id.

Monks claims that in this instance the officers lacked a reasonable belief that Duke was present in the apartment because an officer had driven past on several occasions in the week preceding the entry but had not seen Duke's vehicle. However, the evidence most favorable to the trial court's ruling indicates that the officers proceeded to the address listed on the warrant for Duke and heard movement inside. Receiving no response to knocks, the officers contacted the building maintenance manager. The maintenance manager was able to verify that the apartment in question was occupied by Duke; he also reported having heard movement in the apartment as the officers knocked and requested entry. From these circumstances, a law enforcement officer could form the reasonable belief that Duke was inside the apartment.

The officers had a warrant for the arrest of Duke at a location that proved to be her residence; entering the apartment to effect that arrest upon reasonable belief that she was inside did not constitute a violation of the Fourth Amendment. We cannot conclude that the trial court erred in denying Monks's motion to suppress evidence in this respect.

<u>Pre-Miranda Statements</u>

Monks was first read his <u>Miranda</u> rights when he was taken in the police vehicle for transport to jail. He claims that pre-<u>Miranda</u> statements were elicited in violation of his Fifth Amendment right against self-incrimination.

<u>Miranda</u> warnings must be given to a person in police custody before interrogation; however, officers are not required to give <u>Miranda</u> warnings unless the defendant is both in custody and subject to interrogation. <u>Campos</u>, 885 N.E.2d at 602.

Monks was not being questioned by an officer when he spontaneously claimed ownership of the items in the apartment and professed to be harvesting methamphetamine for personal use. Apart from this volunteered information, Monks has not identified a question to which he provided an incriminating response or to which he related the substance of the allegedly incriminating response. Because Monks did not provide incriminating information while undergoing custodial interrogation, there was no <u>Miranda</u> violation.

**Conclusion**

Police did not violate Monks's Fourth Amendment rights by entering his apartment to serve an arrest warrant. Monks was not subjected to custodial interrogation without <u>Miranda</u> warnings, in violation of his Fifth Amendment right against self-incrimination. Thus, the

8

trial court did not err in denying the motion to suppress evidence.

Affirmed.

NAJAM, J., and BARNES, J., concur.