## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2019, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Mack,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 12, 2019

Court of Appeals Case No. 19A-CR-131

Appeal from the Marion Superior Court

The Honorable Clayton Graham, Judge

Trial Court Cause No. 49G07-1802-CM-6532

**Bradford, Judge.**

# Case Summary

At approximately midnight on February 25, 2018, Indianapolis Metropolitan Police Officer Dwayne May received a dispatch indicating that a group of individuals were threatening to shoot each other at a hotel. Upon arriving at the hotel, Officer May observed a group of individuals standing outside the hotel and also observed one individual in the group, later identified as Robert Mack, tucking a handgun into his waistband. As Mack attempted to leave the scene, Officer May conducted a *Terry*[1] stop, discovering the handgun on Mack's person. Mack was charged with Class A misdemeanor carrying a handgun without a license and found guilty as charged. Mack contends that the search of his person violated his rights against unreasonable searches and seizures pursuant to the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Because we disagree, we affirm.

# Facts and Procedural History

Shortly after midnight on February 25, 2018, Officer May responded to a dispatch for a disturbance at a hotel involving firearms and was the first officer to arrive. Officer May was informed that the caller had reported that persons at the hotel were threatening to shoot each other. As Officer May pulled into the

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

hotel parking lot, he observed several persons standing near the southeast corner of the hotel. Officer May also observed an individual, later identified as Mack, tuck a handgun into his waistband, turn around, and walk away from the group with another individual. Officer May approached Mack as he was walking away and ordered him to stop. After Mack stopped, Officer May ordered Mack to place his hands on a vehicle nearby and patted Mack down for officer safety. Feeling that the handgun was no longer tucked inside Mack's waistband, Officer May asked Mack where his handgun was, and Mack responded that it had fallen down his right pant leg. Officer May retrieved the handgun, and it was later determined that Mack did not have a valid gun permit.

[3] On February 25, 2018, the State charged Mack with Class A misdemeanor carrying a handgun without a license. On December 18, 2018, a bench trial was held, at which Mack objected to the admission of evidence stemming from the *Terry* stop, arguing that it violated his rights pursuant to the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court overruled Mack's objection and found him guilty as charged. The trial court sentenced Mack to 365 days, with 275 of those days to be served on probation and the remaining on home detention.

# Discussion and Decision

[4] Mack contends that the search of his person violated his rights pursuant to the Fourth Amendment of the United States Constitution and Article 1, Section 11

of the Indiana Constitution. The admission of evidence is a matter entrusted to the sound discretion of the trial court, and we will only reverse its ruling if it is clearly against the logic and effect of the facts and circumstances. *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013) (internal quotations omitted). However, we review the trial court's ruling on the constitutionality of a search or seizure *de novo*. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008).

## The Fourth Amendment

Mack contends that Officer May lacked reasonable suspicion to conduct a search of his person, violating his Fourth Amendment rights. The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

"The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Mullen v. State*, 55 N.E.3d 822, 827 (Ind. Ct. App. 2016) (internal quotations omitted). "The Fourteenth Amendment extended to state governments the Fourth Amendment's requirements for constitutionally valid searches and seizures." *Greeno v. State*, 861 N.E.2d 1232, 1234 (Ind. Ct. App. 2007). The Fourth Amendment generally prohibits searches and seizures that are conducted without a warrant supported by probable cause. *Mullen*, 55

N.E.3d at 827. Therefore, to deter such conduct, evidence obtained without a warrant is not admissible in a prosecution unless the search or seizure falls into one of well-delineated exceptions to the warrant requirement. *Id.*

[6]    A *Terry* stop is one of those well-delineated exceptions. *See Greeno,* 861 N.E.2d at 1235 ("A police officer may stop a person to investigate possible criminal behavior without the probable cause required for a search warrant if the officer has a reasonable and articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.") (internal quotations omitted).

> The reasonable suspicion requirement for a *Terry* stop is satisfied when the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. Reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably something less than proof of wrongdoing by preponderance of the evidence. Reasonable suspicion is determined under the totality of the circumstances. If the facts known by the police at the time of the investigatory stop are such that a person of reasonable caution would believe that the action taken was appropriate, the command of the Fourth Amendment is satisfied.

*Id.* (internal quotations and citations omitted). "In addition to detainment, *Terry* permits a reasonable search for weapons for the protection of the police officer, where the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Malone v. State*, 882 N.E.2d 784, 786–87 (Ind. Ct. App. 2008) (quoting *Terry*, 392 U.S. at 27).

[7]     We conclude that Officer May had reasonable suspicion to conduct a *Terry* stop. Officer May received a dispatch indicating that a group of persons at a hotel were threating to shoot each other. Upon his arrival, Officer May observed not only a group outside the hotel but also Mack tucking a handgun into his waistband. Moreover, the fact that it was after midnight in an area known by Officer May to be a low-crime area makes it all the more reasonable for Officer May to suspect this was the group of persons threating to shoot each other, and Mack had the means to make good on that threat. Given the totality of the circumstances, Officer May's suspicion was reasonable. Finally, Officer May was justified in searching Mack for weapons during the *Terry* stop for his own safety. Given that Officer May observed Mack tuck a handgun into his waistband and was told that a group of persons at the hotel were threating to shoot each other, it was reasonable for Officer May to believe that Mack was armed and dangerous.

# Article 1, Section 11

[8]     Mack contends that the *Terry* stop conducted by Officer May violated his rights pursuant to Article 1, Section 11 of the Indiana Constitution. Although the language of Article 1, Section 11 tracks the language of the Fourth Amendment verbatim, Indiana courts have explicitly rejected the expectation of privacy as a test for the reasonableness of a search or seizure. *Mundy v. State*, 21 N.E.3d 114, 117–18 (Ind. Ct. App. 2014). Under the Indiana Constitution, the legality of a governmental search or seizure turns on an evaluation of the reasonableness of police conduct under the totality of the circumstances. *Id.* at 118. The

reasonableness of a search or seizure turns on a balance of: (a) the degree of concern, suspicion, or knowledge that a violation has occurred, (b) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and (c) the extent of law enforcement needs. *Id.* The State has the burden to prove that the search or seizure was reasonable under the totality of the circumstances. *Id.*

[9]     Although we acknowledge that any time a citizen is stopped and subsequently patted down it poses a significant intrusion on their activity, the intrusion in this matter was outweighed by Officer May's suspicion that a violation had occurred and the compelling needs of law enforcement, namely the need to keep the officer and other individuals safe. Officer May was the first officer to arrive at the hotel after being advised that a group of persons were threatening to shoot each other. After arriving, he observed a group of persons standing outside the hotel and then observed Mack tucking a handgun into his waistband before attempting to leave the scene. Coupling these facts with the time of night and the knowledge that this was normally a low-crime area, the degree of suspicion that Mack had participated in the threats to shoot others was significant. Moreover, Officer May's need to keep himself and the other individuals near the hotel safe was also significant. Officer May knew of the alleged threats made and observed an individual in the group with the means to make good on those threats. Under the totality of the circumstances, we conclude that the search was reasonable.

[10]    The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.