# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**YVONNE FERGUSON-WATKINS**
Ferguson-Watkins & Associates
Indianapolis, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1203-CR-135 |
| | ) | |
| GREGORY LAGRONE, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John S. Alt, Master Commissioner
Cause No. 49G14-1012-FD-95970

**March 26, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE[1]

The State charged Gregory Lagrone with one count of dealing in marijuana and one count of possession of marijuana, as Class D felonies. Lagrone filed a motion to suppress evidence seized pursuant to a search warrant that was obtained and executed after police had entered Lagrone's residence and secured the premises. Following a hearing, the trial court granted the motion to suppress, effectively preventing prosecution of Lagrone. In the State's appeal, we consider the following issues sua sponte:

1. Whether the insertion of a global positioning device ("GPS") inside an already opened package of marijuana obtained from United Parcel Service ("UPS") or the tracking of the package's location via that device constituted a search under the Fourth Amendment.

2. Whether the insertion of a "parcel wire" in the marijuana package or the monitoring of that device by police once Lagrone had carried the package into his home constituted a search under the Fourth Amendment.

We also consider the following issue:

3. Whether the State's warrantless entry into Lagrone's home was justified under the exigent circumstances exception to the warrant requirement.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 31, 2010, personnel from UPS alerted the Indianapolis Metropolitan Police Department ("IMPD") that they had found marijuana in a package that they were repackaging because the box had been damaged during shipping. IMPD officers from the Criminal Interdiction Unit, a branch of the narcotics division, retrieved the opened

---

[1] We held oral argument on December 17, 2012.

package containing marijuana from UPS and found that it was addressed to a "Michael Davis" at the address of the Wingate Hotel near West 71st Street and I-465 in Indianapolis. The package contained three semi-transparent, heat-sealed plastic bags of marijuana.

The officers took the package and its contents back to the police station; re-packaged the marijuana with a GPS device and an electronic parcel wire; and affixed the original shipping label to the outside of the package. When affixed in a closed parcel, a parcel wire transmits "different tones to alert law enforcement officers that the device is working, is moving, and when the parcel is opened." Appellant's App. at 17. The parcel wire is tripped when light is let inside the package. The alarm sounds only on the receiver, not on the parcel wire itself.

Officer Scott Wildauer went to the Wingate Hotel and spoke with the desk clerk, who said that no one by the name of Michael Davis was registered there. However, the clerk said that someone had phoned to say that he was expecting a delivery and asked to be called when a package arrived. After back-up officers were dispatched to the hotel, Officer Wildauer, acting as a hotel employee, called the number provided by the caller and said that a package had arrived. Lagrone arrived in a Jaguar at 12:15 p.m., a few minutes after that call. He picked up the package in the hotel lobby, returned to his car with it, and drove away. At that point, officers knew neither Lagrone's identity nor his destination, so surveillance officers followed Lagrone's Jaguar by car, watching him and tracking the package via the GPS tracking device.

3

Lagrone proceeded at a high rate of speed to his home, a split-level house at 4381 Dunsany Court in Indianapolis. The trip took approximately ten minutes, and he took the package with him inside when he arrived. Within a few minutes of his arrival, the parcel wire indicated that the package had been opened. Officers surveilling the house knocked and announced themselves as police, but no one answered the door.

Officers became concerned that Lagrone might attempt to dispose of the marijuana because the presence of the parcel wire would make police involvement "plainfully [sic] obvious" once the package was open. May 25 Transcript at 62. Therefore, when no one answered the door, they forced the door open, entered the home, and secured it for people and weapons. Upon securing the home, officers found Lagrone in the upstairs hallway and ordered him to the ground. They found an open pocketknife underneath him, and the package was on the bed in a nearby bedroom. Also in the home were Lagrone's three children, who were twelve, fourteen, and fifteen years old. After securing the home, officers applied for and obtained a warrant to search Lagrone's home. A judge signed the warrant at 3:36 p.m. that afternoon, and the officers received the warrant and began executing it around 4:00 p.m.

The State charged Lagrone with dealing in marijuana and possession of marijuana, as Class D felonies. Lagrone filed a motion to suppress evidence. The trial court held an evidentiary hearing on that motion on May 25 and November 2, 2011. On February 22, 2012, the court entered its order granting the motion to suppress. Because the suppression of evidence effectively prevents prosecution of this case, the State now appeals. See Ind. Code § 35-38-4-2(5).

4

## DISCUSSION AND DECISION

### Standard of Review

Upon reviewing a motion to suppress, we do not reweigh the evidence or judge the credibility of witnesses but instead consider all uncontroverted evidence together with the conflicting evidence that supports the trial court's decision. McDermott v. State, 877 N.E.2d 467, 471 (Ind. Ct. App. 2007) (citation omitted), trans. denied. A trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb its ruling only where it is shown that the trial court abused that discretion. Id. (citation omitted). An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court. Id. (citation omitted).

We review a trial court's ruling on the constitutionality of a search or seizure de novo. State v. Peters, 921 N.E.2d 861, 866 (Ind. Ct. App. 2011) (citing Campos v. State, 885 N.E.2d 590, 596 (Ind. 2008)). However, deference is given to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. Id. A reviewing court looks to the totality of the circumstances and considers all uncontroverted evidence together with conflicting evidence that supports the trial court's decision. Id.

When the State appeals the trial court's grant of a defendant's motion to suppress evidence, the State is appealing from a negative judgment and therefore has the burden to demonstrate that the measures it used to seize the evidence were constitutional. Nolan v. City of Indianapolis, 933 N.E.2d 894, 898 (Ind. Ct. App. 2010) (citation omitted), trans. denied. To fulfill this burden, the State must demonstrate that the evidence is without

conflict and that the evidence and all reasonable inferences flowing therefrom lead to a conclusion opposite that of the trial court.  Id.  This court may not weigh the evidence or judge the credibility of the witnesses, and we consider only the evidence most favorable to the trial court's judgment.  Id.

### Electronic Surveillance and the Fourth Amendment

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Warrantless searches are presumptively unreasonable, although the Court has recognized a few limited exceptions to this rule.  Brigham City v. Stuart, 547 U.S. 398, 402 (2006).  Thus, unless one of several established exceptions applies, law enforcement officers must obtain a warrant based on probable cause before executing a search or a seizure.  State v. Hobbs, 933 N.E.2d 1281, 1284 (Ind. 2010).

We initially consider whether the officers' warrantless installation and monitoring of the GPS device and the parcel wire violated the Fourth Amendment.  We then consider whether the warrantless entry of Lagrone's home by police falls under the exigent circumstances exception to the warrant requirement.  Although we have found no single precedent involving a previously opened container, the use of these electronic devices, and transmission from the defendant's home, three United States Supreme Court's opinions when considered together provide an analytical framework.  In Illinois v. Andreas, 463 U.S. 765, 771 (1983), the Court held that the privacy interest in a container

is lost when it is lawfully opened and that that interest is not revived when the container is closed or sealed again. In United States v. Karo, 468 U.S. 705, 715 (1984), the Court held that the warrantless monitoring of a tracking beeper in a container located inside a home violates the Fourth Amendment rights of those with a reasonable privacy interest in the home. Finally, in Kentucky v. King, 131 S. Ct. 1849, 1858 (2011), the Court held that a warrantless entry into a home by police to prevent the destruction of evidence is reasonable and, thus, allowed under the Fourth Amendment only where the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment. Synthesizing these three cases, together with other relevant authority, we conclude that the warrantless use of the parcel wire to monitor the package within Lagrone's house violated the Fourth Amendment. Due to that violation, under King the State cannot justify its warrantless intrusion into Lagrone's home under the exigent circumstances exception to the Fourth Amendment.

## Issue One: GPS Device

The first question presented is whether the insertion of the GPS device in the opened package obtained from UPS or the tracking of the package's location via that device constitutes a search under the Fourth Amendment. The United States Supreme Court considered GPS tracking in United States v. Jones, 132 S. Ct. 945 (2012). There, a task force comprised of FBI and local agents in the District of Columbia attached a GPS device without a warrant[2] to the undercarriage of an automobile in the possession of a

---

[2] Agents had obtained a warrant but did not execute the warrant until after it had expired.

suspected drug trafficker.[3]  The task force tracked the vehicle via the GPS device for twenty-eight days, replacing the external battery on the device once in that time period while the vehicle was parked in a public lot.  Based in part on the data obtained from that monitoring, Jones was convicted of drug offenses.  The United States Court of Appeals for the District of Columbia reversed the conviction, concluding that the "admission of evidence obtained by warrantless use of the GPS device . . . violated the Fourth Amendment."  945 S. Ct. at 949.  The United States Supreme Court granted certiorari and held that the Government's installation of a GPS device on a target's vehicle and use of the device to track the vehicle's movements constituted a "search" under the Fourth Amendment.[4]  Id.

The facts in the present case are distinguishable.  In Jones, the GPS device was attached to a vehicle after the vehicle was already in Jones' possession, and Jones' movements were tracked for twenty-eight days.  But here the GPS device was attached before the parcel came into Lagrone's possession, the police used the device to track Lagrone's movements for only ten minutes, and during those ten minutes police followed Lagrone and supplemented the information provided by the device with visual surveillance.  Thus, while Jones provides a Fourth Amendment analysis for the monitoring of GPS devices, it is inapposite on the facts in this case.

---

[3]  The vehicle was registered to the suspect's wife, but that fact was not a material issue on appeal.

[4]  Although the Court held that the installation and monitoring of the GPS device constituted a search, the Court specifically declined to address whether that search was reasonable under the Fourth Amendment.  Jones, 132 S. Ct. at 954.

We next consider the Court's opinion in Illinois v. Andreas, 463 U.S. 765 (1983). In that case the Court held that "[n]o privacy interest remains in contraband in a container once government officers lawfully have opened that container and identified its contents as illegal." Id. at 771. "The simple act of resealing the container to enable the police to make a controlled delivery does not operate to revive or restore the lawfully invaded privacy rights." Id. Similarly, in United States v. Jacobsen, 466 U.S. 109, 117 (1984), where a shipper opened a package, found contraband, and then notified law enforcement, the Court held that, "[o]nce the frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now[ ]nonprivate information." Here, UPS had opened the package before calling and turning it over to police. Any privacy interest in the package was lost when it was opened while in the shipper's possession. See id. The officers' subsequent repackaging of the contraband did not revive any privacy interest. See Jacobsen, 466 U.S. at 117; Andreas, 463 U.S. at 771. As such, the officers did not violate any privacy interest when they installed the GPS device when they repackaged the marijuana and, therefore, they did not violate the Fourth Amendment by installing the device. See Jacobsen, 466 U.S. at 117.

Having determined that the installation of the GPS device did not violate the Fourth Amendment, we next address the transmission of information from the GPS device under the Fourth Amendment. Relevant to this inquiry is the Court's opinion in United States v. Knotts, 460 U.S. 276 (1983). There, law enforcement officers installed a beeper inside a container, with the permission of the owner, before delivery was made to

9

the addressee.[5]  The beeper signal was tracked on the public roads to the location where defendants deposited it outside a building.  Id. at 285.  The Court held that the warrantless monitoring of the beeper signal by law enforcement agents on the public road and outside the building where defendants left it did not violate legitimate expectations of privacy.  Id.

The Supreme Court's opinion in United States v. Karo is also on point.  In Karo, law enforcement officers installed a beeper into a container with the owner's permission before delivery to the addressee.  The officers tracked the container via the beeper as defendants drove on public roads and then carried the container into a home they had rented.  The Court held that the monitoring of the beeper while the vehicle was on public roads did not violate the Fourth Amendment.  468 U.S. at 721.

Here, the GPS device was used in conjunction with visual surveillance as officers followed Lagrone from the hotel where he had picked up the package and then along public roadways to his ultimate destination, his home.  Under Knotts and Karo, use of the GPS device in this manner and to this limited extent did not constitute a search.  At oral argument on appeal, Lagrone does not contend or identify any evidence in the record that the police continued to monitor the package using the GPS device after Lagrone had carried it into his home.  And the State pointed out that no data obtained from the GPS device was introduced at trial.  On these facts, we find no Fourth Amendment violation in the officer's use of the GPS device to track the location of the package.  See Knotts, 460 U.S. at 285.

---

[5]  A beeper transmits a signal via radio waves, and monitoring the signal allows police to track its location within a city or country.  A GPS device uses satellite technology to track location anywhere on the planet.

10

## Issue Two:  Parcel Wire

Next we consider whether the installation and monitoring of the parcel wire constitutes a search under the Fourth Amendment.  As explained in Issue One above, Lagrone had no privacy interest in the package once it was opened while in the possession of the commercial shipper and was turned over to law enforcement.  See Andreas, 463 U.S. at 771.  As such, the insertion of the parcel wire, without more, did not constitute a search under the Fourth Amendment.  See id.  Thus, we are left to determine whether the use of the parcel wire to determine when the parcel was opened, namely the monitoring of that device when located within Lagrone's home, constitutes a search under the Fourth Amendment.  We conclude that it does.

Again, in Karo, law enforcement officers used a beeper to track a container, and the Court held that using the beeper to track the container while on public roads did not violate the Fourth Amendment.  468 U.S. at 717.  But the Court reached a different result with respect to the continued monitoring that occurred once the container was taken inside a residence that some of the defendants had rented.  After the container was taken inside the residence, officers used the beeper on two separate days to confirm that the container was still inside.  The officers then applied for and obtained a search warrant for the home.  The Court stated:

> We . . . reject the Government's contention that it should be able to monitor beepers in private residences without a warrant if there is the requisite justification in the facts for believing that a crime is being or will be committed and that monitoring the beeper wherever it goes is likely to produce evidence of criminal activity.   Warrantless searches are presumptively unreasonable, though the Court has recognized a few limited exceptions to this rule . . . .

11

Id. at 717. And the Court observed that the monitoring of an electronic device like a beeper "reveal[s] a critical fact about the interior of the premises that the Government is extremely interested in knowing and that it could not have otherwise obtained without a warrant." 468 U.S. at 715. Thus, the Court held that the monitoring of the beeper violated the Fourth Amendment rights of the defendants who had a justifiable privacy interest in the home. Id. at 714.

In rejecting the Government's argument that warrants should not be required in such circumstances, the Court observed:

> The Government's contention that warrantless beeper searches should be deemed reasonable is based upon its deprecation of the benefits and exaggeration of the difficulties associated with the procurement of a warrant. . . . The primary reason for the warrant requirement is to interpose a "neutral and detached magistrate" between the citizen and "the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14 (1948). Those suspected of drug offenses are no less entitled to that protection than those suspected of nondrug offenses. Requiring a warrant will have the salutary effect of ensuring that use of beepers is not abused, by imposing upon agents the requirement that they demonstrate in advance their justification for the desired search.

Id. at 717 (some citations omitted).

Still, the Government argued that "it would be impossible to describe the 'place' to be searched, because the location of the place is precisely what is sought to be discovered through the search." Id. at 718. But the Court held that "it will still be possible to describe the object into which the beeper is to be placed, the circumstances that led agents to wish to install the beeper, and the length of time for which the beeper surveillance is requested." Id.

12

Here, after Lagrone picked up the package, law enforcement officers monitored the parcel wire's receiver for the signal indicating that the package had been opened. A few minutes after Lagrone entered his home, the receiver was activated by the signal, indicating that someone had opened the package. At that point, Lagrone was inside his home and, therefore, had a reasonable expectation of privacy. See U.S. Const. amend. IV. Whether someone had opened the package was information that could not have been observed from outside the home. Under Karo, the monitoring of the parcel wire to determine when the package was opened constitutes a search of Lagrone's home. Karo, 468 U.S. at 717.

Having determined that the monitoring of the parcel wire inside Lagrone's home was a warrantless search, we next consider whether that search was unreasonable. Again, a search is unreasonable unless it satisfies one of the exceptions to the warrant requirement. King, 131 S. Ct. at 1856. Only the exigent circumstances exception might apply on the facts presented.[6] In such cases, the "exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." King, 131 S. Ct. at 1856 (internal quotation marks and alteration omitted) (citation omitted). Exigencies justifying the warrantless search of a home include entry to render emergency assistance to an injured occupant or to protect an occupant from imminent injury, entry in hot pursuit of a suspect, and entry to prevent the imminent destruction of evidence. Id. A review of the record does not show that any of these situations existed so as to render the warrantless monitoring of the

_____

[6] Other exceptions include consent and plain view, see King, 131 S. Ct. at 1858; open fields, Oliver v. United States, 466 U.S. 170, 181 (1984); and searches incident to a lawful arrest, see Arizona v. Gant, 556 U.S. 332, 351 (2009). None of those exceptions apply in this case.

parcel wire objectively reasonable. See id. Therefore, the exigent circumstances exception to the warrant requirement does not apply to the monitoring of the parcel wire inside Lagrone's home. As such, we conclude that the monitoring of the parcel wire inside Lagrone's home constitutes an unreasonable search in violation of the Fourth Amendment.

### Issue Three:  Warrantless Entry and Exigent Circumstances

Finally, we must determine whether the warrantless entry of Lagrone's home violated the Fourth Amendment. As mentioned above, the warrant requirement of the Fourth Amendment is subject to certain reasonable exceptions. King, 131 S. Ct. at 1856. One well-recognized exception applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." Id. (internal quotation marks omitted) (citation omitted). "Warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement." Id. at 1858. Therefore, as the Supreme Court explained in King:

> [T]he exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable in the same sense. Where . . . the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed.[]"

Id. (emphasis added).

Probable cause to believe contraband is present is necessary to justify a warrantless search, but that alone is not sufficient. United States v. Rubin, 474 F.2d 262, 268 (2nd Cir. 1973), cert. denied, 414 U.S. 833 (1973). When government agents have

14

probable cause to believe contraband is present and, in addition, based on the surrounding circumstances or the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. Id. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Id.

> Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, compare United States v. Pino, 431 F.2d 1043, 1045 (2d Cir. 1970)[, cert. denied, 402 U.S. 989 (1971)], with Niro v. United States, 388 F.2d 535 (1st Cir. 1968); (2) reasonable belief that the contraband is about to be removed, United States v. Davis, 461 F.2d 1026, 1029-30 (3d Cir. 1972); Hailes v. United States, 267 A.2d 363 (D.C.C.A. 1970); (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, United States v. Pino, 431 F.2d at 1045; (4) information indicating the possessors of the contraband are aware that the police are on their trail, United States v. Doyle, 456 F.2d 1246 (5th Cir. 1972); and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic," United States v. Manning, 448 F.2d 992, 998-99 (2d Cir. 1971)[, cert. denied, 404 U.S. 995 (1971)]; United States v. Davis, 461 F.2d at 1031-32.

Id. at 268-69. When a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement. Peters v. State, 888 N.E.2d 274, 278 (Ind. Ct. App. 2008) (citation omitted), trans. denied.

Here, the trial court granted Lagrone's motion to suppress the evidence obtained from his home upon execution of a search warrant that police obtained following the warrantless entry of the home. At a hearing a few days later, the court explained the reasoning behind its decision:

> The Court ruled in the defense's favor on [sic] this case on the grounds one, that I think in this case that the police officers created the exigent circumstances in this case by the way the investigation occurred. And what

15

I mean by that is that the only marijuana that the officers knew about was the marijuana in the box. And when Mr. Lagrone came and picked up the box they had the opportunity, at that time, to seize him in the hotel or two, they could have made a traffic stop on [sic] this case. And I think it was perfectly foreseeable that when the marijuana went into the house that that box could have been opened. And if the officers were truly interested in preserving the box in a closed state once it was picked up they could have got him at the hotel, they could have got him in a traffic stop. They did not have to wait under any circumstances for the marijuana to go into the residence. And at that time, they had no other information that there was [sic] any other drugs[.]

February 29 Transcript at 35-36 (emphasis added).

We agree with the trial court that the police officers created the exigent circumstances by the manner in which the investigation occurred. We also agree with the trial court that police could have arrested Lagrone as soon as he picked up the package at the hotel or en route to his house. We emphasize, however, that the police were not required to make the arrest sooner rather than later.

[L]aw enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause. Faulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution.

King, 131 S. Ct. at 1860-61 (internal quotation marks and citations omitted). Such a rule would unnecessarily impede police investigations in drug and other contraband cases.

But the facts here fall squarely within the rule in King that a warrantless entry based on exigent circumstances does not violate the Fourth Amendment so long as the police "did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." King, 131 S. Ct. at 1858. As discussed above, just as with a beeper, see Karo, 468 U.S. at 715, the warrantless monitoring of the parcel wire

16

while it was inside the home violated the Fourth Amendment. The exigency here arose only because the officers were alerted by the parcel wire that Lagrone had opened the package, knowledge they acquired by conduct that violated the Fourth Amendment. Under King, the police may not use information obtained in violation of the Fourth Amendment to establish exigent circumstances and avoid the warrant requirement. Thus, on these facts, the exigent circumstances exception to the warrant requirement cannot apply to the warrantless entry of Lagrone's home.[7] See King, 1315 S. Ct. at 1858.

**Conclusion**

In sum, we conclude that the installation of the GPS device and the parcel wire into the package Lagrone picked up from the hotel did not violate the Fourth Amendment because any privacy interest Lagrone had in the package was lost when UPS opened the package on its premises. Nor did the police monitoring of the GPS device to track the package en route to Lagrone's home violate the Fourth Amendment, because officers also tracked Lagrone on the highway visually. Moreover, the evidence presented does not show that the GPS monitoring continued after Lagrone carried the package into his home.

But the police then monitored the package without a warrant via the parcel wire after the package was inside Lagrone's home. The information obtained from that device, namely, that the package had been opened, could not have been observed from outside the home. As such, the receipt of that information via the parcel wire without a warrant violated Lagrone's Fourth Amendment rights. And under King the police cannot use the exigent circumstances exception to justify a warrantless entry into the home,

---

[7] Because we conclude on the facts presented that the warrantless entry of Lagrone's home violated the Fourth Amendment, we need not consider whether the entry violated Article I, Section 11 of the Indiana Constitution.

based on the electronic signal from the parcel wire located inside the home, without having first obtained a warrant. Thus, we affirm the trial court's order granting Lagrone's motion to suppress evidence obtained as a result of their warrantless search of Lagrone's home.

Affirmed.

KIRSCH, J., and MAY, J., concur.