## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Stephen Gerald Gray
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Tyler G. Banks
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William C. Kinslow,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 12, 2019

Court of Appeals Case No.
18A-CR-2324

Appeal from the
Marion Superior Court

The Honorable
Shatrese M. Flowers, Judge

Trial Court Cause No.
49G20-1703-F2-9698

**Kirsch, Judge.**

[1] William C. Kinslow ("Kinslow") brings this interlocutory appeal, challenging the trial court's denial of his motion to suppress illegal drugs and weapons

found in his vehicle. He raises two issues, which we consolidate and restate as whether police violated his rights under the Fourth Amendment to the U.S. Constitution or Article 1, Section 11 of the Indiana Constitution when they placed electronic tracking devices in a package containing drugs that Kinslow later retrieved.

[2] We affirm.

## Facts and Procedural History

[3] Detective Steven Brinker ("Detective Brinker") worked for the Indianapolis Metropolitan Police Department's Criminal Interdiction Unit. *Tr. Vol. 2* at 8. On March 9, 2017, he was at a FedEx facility in Marion County when he identified a suspicious package. *State*'s *Ex.* 1. This package was addressed to Charlie Sims at 3222 North Bancroft Street in Indianapolis. *Tr. Vol. 2* at 10. Because Detective Brinker believed the package was suspicious, he had a police dog perform a free-air sniff of the package, and the dog alerted to the presence of drugs. *State's Ex.* 1. Detective Brinker applied for a search warrant to open the package, which was granted. *State's Ex.* 2. Inside of the package, Detective Brinker found methamphetamine and marijuana. *State's Ex.* 1. He and other officers removed most of drugs from the package but left some inside. *Tr. Vol. 2* at 10. Officers also placed a GPS tracking device and a "light sensor device" (collectively, "the electronic devices") inside of the package. *Id.* The purpose of the light sensor device was to detect when the package was opened. *Id.*

[4] At 12:39 p.m. on the same date, an undercover officer delivered the package to 3222 North Bancroft Street. *Id.* at 11. At 1:35 p.m., Kinslow arrived at 3222 North Bancroft and entered the house. *Id.* He emerged ten minutes later, picked up the package, and took it with him as he entered his large SUV. *Id.* While Detective Brinker briefly observed Kinslow, he had several other officers track Kinslow. *Id.* at 12-13. Some officers relayed information to Detective Brinker over a covert radio channel, including one officer who was monitoring the electronic devices. *Id.*

[5] Kinslow drove around Indianapolis, stopping at several locations, until approximately 8:00 p.m. *State*'s *Ex.* 1; *Tr. Vol. 2* at 11-12. The police never lost visual contact of Kinslow's vehicle. *Tr. Vol. 2* at 13-14. At approximately 8:00 p.m., the electronic devices indicated that Kinslow's vehicle had stopped and that the package had been opened. *Id.* at 14, 22; *State's Ex.* 1. Officers saw Kinslow step out of his vehicle, walk to a dumpster, and place an item in the dumpster, which they later discovered was the GPS device. *Tr. Vol. 2* at 14, 22. At 8:13 p.m., officers stopped Kinslow and recovered the package. *State's Ex.* 1. The police also found methamphetamine, marijuana, and a handgun in Kinslow's vehicle. *Appellant's App. Vol. 2* at 16-18.

[6] On March 14, 2017, the State charged Kinslow with dealing in methamphetamine[1] as a Level 2 felony, possession of methamphetamine[2] as a Level 3 felony, dealing in marijuana[3] as a Level 6 felony, possession of marijuana[4] as a Level 6 felony, and carrying a handgun without a license[5] as a Class A misdemeanor. *Id.* Kinslow filed a motion to suppress evidence, and at the hearing on the motion to suppress, Kinslow acknowledged that he was not disputing the validity of the warrant that allowed police to originally open the package, but he argued that the warrant did not allow the police to search anything else. *Tr. Vol. 2* at 39-40. The trial court denied the motion to suppress. *Appellant's App. Vol. 2* at 13-15. On August 31, 2018, the trial court certified its ruling for interlocutory appeal. *Id.* at 50. On September 26, 2018, Kinslow filed a petition for this court to accept jurisdiction, and on November 2, 2018, we granted that petition. Kinslow now appeals.

## Discussion and Decision

## I. Federal Constitution

[7] Kinslow argues that placing the electronic devices inside the package and monitoring his activities through those electronic devices violated his rights

---

[1] *See* Ind. Code § 35-48-4-1.1(a)(2), (e)(1).

[2] *See* Ind. Code § 35-48-4-6.1(a), (d).

[3] *See* Ind. Code § 35-48-4-10(a)(2), (c)(2)(A).

[4] *See* Ind. Code § 35-48-4-11(a)(1), (c).

[5] *See* Ind. Code § 35-47-2-1(e).

under the Fourth Amendment to the United States Constitution. We review the denial of a motion to suppress in a manner similar to reviewing the sufficiency of the evidence. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). We consider only the evidence favorable to the trial court's ruling, along with uncontradicted evidence to the contrary to decide if the evidence is sufficient to support the denial of the motion to suppress. *Id.* The trial court has broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Glasgow v. State*, 99 N.E.3d 251, 256 (Ind. Ct. App. 2018). We defer to the trial court's factual determinations unless they are clearly erroneous. *Jacobs v. State*, 76 N.E.3d 846, 849 (Ind. 2017). A trial court's legal conclusions about the constitutionality of a search and seizure are reviewed de novo. *Id.*

[8]     In arguing that placing the electronic devices in the package violated his Fourth Amendment rights, Kinslow relies on *United States v. Jones*, 132 S. Ct. 945 (2012), in which the U.S. Supreme Court ruled that the government's installation of a GPS device on a suspect's vehicle constituted a "search" under the Fourth Amendment. *Id.* at 949. *Jones* did not hold that installation of the GPS device violated Jones's expectation of privacy but instead held that it constituted an impermissible trespass. *Id.* at 950-54.

[9]     Here, Kinslow argues that by placing the electronic devices in the package, the police trespassed on his property. Kinslow argues that the officers' actions also constituted a trespass on his vehicle, even though he, not the police, placed the package within his vehicle. Finally, even though *Jones* did not rely on an

expectation-of-privacy analysis, Kinslow cites that as one more ground to suppress the contraband found in his vehicle.

[10]   *Jones* does not apply here because its facts are significantly different from the facts in the present case. In *Jones*, the GPS device was attached to a vehicle after the vehicle was already in Jones's possession, and police tracked Jones's movements for twenty-eight days. Here, however, police placed the electronic devices in a package that did not bear Kinslow's name and tracked his movements for only a little over six hours, maintaining continuous visual contact with Kinslow's vehicle. They also placed the electronic devices inside the package well before the package came into Kinslow's possession. Therefore, Kinslow's trespass argument under the Fourth Amendment fails.

[11]   As to Kinslow's argument that the conduct of the police violated his expectation of privacy, we look to *Lagrone v. State*, 985 N.E.2d 66 (Ind. Ct. App. 2013), which found no expectation of privacy under facts almost identical to the facts here. In *Lagrone*, personnel from UPS alerted police that they found marijuana in a package that they were repackaging because the package was damaged. *Id.* at 69. Police retrieved the package, which was addressed to someone other than Lagrone. *Id.* As they repackaged the marijuana, they placed a GPS device and parcel wire inside the package. *Id.* They took the package to the address on the shipping tag, a Wingate Hotel located on the northwest side of Indianapolis. *Id.* at 70. Lagrone picked up the package and drove away; police followed him because at the time they did not know

Lagrone's identity or destination. *Id.* They tracked Lagrone through both visual observation and GPS tracking information. *Id.*

[12] A panel of this court ruled that Lagrone had no expectation of privacy in the package, and, therefore, the police did not violate Lagrone's Fourth Amendment rights by placing the GPS device and parcel wire into the package. *Id*. at 72-74. We relied on several decisions of the United States Supreme Court, including *Illinois v. Andreas*, 463 U.S. 765 (1983). In that case, the Court held that "[n]o privacy interest remains in contraband in a container once government officers lawfully have opened that container and identified its contents as illegal." *Id.* at 771. "The simple act of resealing the container to enable the police to make a controlled delivery does not operate to revive or restore the lawfully invaded privacy rights." *Id.* We also cited *United States v. Jacobsen*, 466 U.S. 109 (1984), where a shipper opened a package, found contraband, and then notified law enforcement. The Supreme Court held that, "[o]nce the frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *Id*. at 117. Applying that precedent, we held that because UPS had opened the package before turning it over to police, any privacy interest in the package was lost when it was opened while in the shipper's possession. *See Lagrone*, 985 N.E.2d at 73. We also concluded that the officers' subsequent repackaging of the package did not revive any privacy interest. *See id*. (citing *Jacobsen*, 466 U.S. at 117 and *Andreas*, 463 U.S. at 771).

In *Lagrone*, we also determined that transmission of information from the GPS device and parcel wire did not violate Lagrone's expectation of privacy, relying on *United States v. Knotts*, 460 U.S. 276 (1983). In *Knotts*, law enforcement officers installed a beeper inside a container before delivery was made to the addressee. *Id*. at 277. The beeper signal was tracked on the public roads to the location where defendants deposited it outside a building. *Id.* at 285. *Knotts* held that the warrantless monitoring of the beeper signal by law enforcement agents on the public road and outside the building where defendants left it did not violate legitimate expectations of privacy. *Id*.; *see also United States v. Karo*, 468 U.S. 705, 721 (1984) (where law enforcement officers installed a beeper inside a container and tracked the container via the beeper as defendants drove on public roads, monitoring the beeper while the vehicle was on public roads did not violate the Fourth Amendment).

The factual similarities between *Lagrone* and this case are striking. As in *Lagrone*, police found drugs in the package well before Kinslow possessed the package. At that point, any expectation of privacy Kinslow may have had in the package evaporated and resealing the package after placing the electronic devices in the package did not restore an expectation of privacy. *See Andreas*, 463 U.S. at 771. In addition, the use of the electronic devices to monitor the movements of Kinslow and the package on public roads did not constitute a search. *See Knotts*, 460 U.S. at 285; *Karo*, 468 U.S. at 721. Therefore, the police did not violate any purported expectation of privacy in the package and in the

data from the electronic devices that the police used to track Kinslow and the package. Thus, Kinslow's Fourth Amendment rights were not violated.[6]

## II.    Indiana Constitution

Kinslow argues that the warrantless installation of the electronic devices into the package and the monitoring of Kinslow's movements and the status of the package was unreasonable under Article 1, Section 11 of the Indiana Constitution. Article 1, Section 11 of the Indiana Constitution is interpreted and applied independently of the Fourth Amendment. *State v. Washington*, 898 N.E.2d 1200, 1205-06 (Ind. 2008) (citing *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001)). The focus of the state constitutional analysis is not on reasonable expectations of privacy but on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359-60 (Ind. 1995). To determine the reasonableness of police conduct, reviewing courts look at three factors: the degree of suspicion that a crime has

---

[6] Kinslow also argues that *Carpenter v. United States*, 138 S. Ct. 2206 (2018) mandates suppression of the evidence. In *Carpenter*, the FBI obtained location-tracking data about Carpenter, a robbery suspect, for 12,898 location points, cataloging Carpenter's movements over 127 days—an average of 101 data points per day. *Id*. at 2212, 2217-18. While the United States Supreme Court found that tracking such information violated Carpenter's expectation of privacy, we read the Court's holding to apply to records, such as cell-phone tracking data, that "hold for many Americans the 'privacies of life.'" *Id.* (quoting *Riley v. California*, 573 U.S. 373, 403 (2014)). Cell phone location data "provides an intimate window into a person's life, revealing not only his particular movements, but through them his professional, political, religious, and sexual associations. *Id.* at 2217. Because the tracking of Kinslow lasted only approximately six hours and because the electronic devices used here do not provide an intimate window into a person's life, we find that *Carpenter* has no bearing on this case.

occurred; the degree of intrusion on the citizen's ordinary activities; and the extent of law enforcement needs. *Id.* at 359-61.

[16]   Kinslow admits that the degree of concern that a crime was committed was high. He argues, however, that the needs of law enforcement were minimal because the officers had ample time to seek and obtain a search warrant to put the electronic devices into the package. He also contends that the degree of intrusion was severe, but he does not explain why.

[17]   We reject Kinslow's claim that placing the electronic devices inside the package and monitoring his activities partly through those devices was unreasonable under the totality of the circumstances. *See Litchfield*, 824 N.E.2d at 359. First, we need not address the degree of concern that a crime has been committed because Kinslow concedes that the degree of concern was high. Second, we reject that the degree of intrusion was high. Kinslow was not obstructed in his "ordinary activities" until he was arrested. *Id.* at 360-61. While being monitored, he travelled freely to wherever he wanted to travel. Third, the needs of law enforcement to place the electronic devices was high. If the officers had lost sight of Kinslow, the electronic devices would have prevented the methamphetamine and marijuana from being sold, lost, or discarded before the police could seize the drugs. As to Kinslow's argument that the police should have obtained a warrant before putting the electronic devices in the package, Kinslow fails to acknowledge that the potential delay caused by seeking a warrant could have tipped off Kinslow that police had discovered that the package contained illegal drugs and would have thus compromised their

important task of enforcing laws regarding the possession and sale of illegal drugs. Accordingly, under the totality of the circumstances, the conduct of the police was not unreasonable, so the placement of the electronic devices in the package and using those devices to track Kinslow and the package did not violate Kinslow's rights under Article 1, Section 11 of the Indiana Constitution.

[18] Affirmed.

Vaidik, C.J., and Altice, J., concur.